# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHIGAN DEMOCRATIC PARTY,**

**Plaintiff,**

**v**

**MICHIGAN REPUBLICAN PARTY, DONALD J. TRUMP FOR PRESIDENT, INC., ROGER J. STONE, JR., and STOP THE STEAL INC.**

**Defendants.**

**Case No. 2:16-cv-13924**

**Hon. Mark A. Goldsmith**

**MOTION TO DISMISS**

---

Mary Ellen Gurewitz (P25724)
Andrew Nickelhoff (P37990)
Sachs Waldman, PC
Attorney for Plaintiff
2211 E. Jefferson Ave., Suite 200
Detroit, MI  48207
(313) 496-9441
megurewitz@sachswaldman.com
anickelhoff@sachswaldman.com

Gary P. Gordon (P26290)
W. Alan Wilk (P54059)
Jason T. Hanselman  (P61813)
Dykema Gossett PLLC
Attorneys for Defendant Michigan Republican Party
Capitol View
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9152
ggordon@dykema.com
jhanselman@dykema.com

---

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## MOTION TO DISMISS

Defendant Michigan Republican Party (the "MRP"), by its attorneys, Dykema Gossett PLLC, moves to dismiss MDP's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

In compliance with E.D. Mich. Local Rule 7.1(a), the MRP's counsel called Plaintiff's counsel on November 7, 2016, to (i) explain the nature of this Motion and its legal basis, and (ii) request concurrence in the relief sought; however, such concurrence was not received.

LOCAL RULE CERTIFICATION: I, Gary P. Gordon, certify that this document complies with Local Rule 5.1(a), including: double spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3.)

WHEREFORE, for the reasons stated in the accompanying Brief, the MRP respectfully requests that this Court grant its motion, and enter an Order (i) dismissing all of Plaintiff's claims with prejudice; (ii) awarding the MRP its costs and fees, including attorney fees, incurred in having to defend this action; and (iii) granting any other relief this Court deems appropriate.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date: November 7, 2016

By: /s/ Gary P. Gordon
Gary P. Gordon (P26290)
W. Alan Wilk (P54059)
Jason T. Hanselman (P61813)
Attorneys for Defendant Michigan
Republican Party
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
Telephone: (517) 374-9100
ggordon@dykema.com
awilk@dykema.com
jhanselman@dykema.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHIGAN DEMOCRATIC PARTY,**

**Plaintiff,**

**v**

**MICHIGAN REPUBLICAN PARTY, DONALD J. TRUMP FOR PRESIDENT, INC., ROGER J. STONE, JR., and STOP THE STEAL INC.**

**Defendants.**

**Case No. 2:16-cv-13924**

**Hon. Mark A. Goldsmith**

**BRIEF IN SUPPORT OF MICHIGAN REPUBLICAN PARTY'S MOTION TO DISMISS**

---

Mary Ellen Gurewitz (P25724)
Andrew Nickelhoff (P37990)
Sachs Waldman, PC
Attorney for Plaintiff
2211 E. Jefferson Ave., Suite 200
Detroit, MI 48207
(313) 496-9441
megurewitz@sachswaldman.com
anickelhoff@sachswaldman.com

Gary P. Gordon (P26290)
W. Alan Wilk (P54059)
Jason T. Hanselman (P61813)
Dykema Gossett PLLC
Attorneys for Defendant Michigan Republican Party
Capitol View
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9152
ggordon@dykema.com
awilk@dykema.com
jhanselman@dykema.com

---

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES PRESENTED............................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF
SOUGHT.......................................................................................................ix

I.  SUMMARY OF CASE AND MOTION ............................................1

II.  STANDARD OF REVIEW ...................................................................3

III.  ARGUMENT .........................................................................................5

    A.   MDP States No Claim Against the MRP ..............................5

        1. There is No Evidence That MRP Participated in a Conspiracy to
          Intimidate or Suppress Voters .......................................6

    B.   MDP Lacks Standing ............................................................7

    C.   This Case Is Not Ripe...........................................................11

    D.   This Case Is Moot.................................................................13

    E.   Count I Fails to State a Claim .............................................16

        1. The MDP Has Not Alleged or Provided Any Evidence of "Racial
          Animus"......................................................................17

        2. The MDP Have Not Alleged that the MRP Violated Any Right
          Protected Against Private Impairment ........................20

    F.   Count II Fails to State a Claim Under the Voting Rights Act..........23

CONCLUSION .......................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adult Video Ass'n v. United States Dep't of* Justice, 71 F.3d 563, 567
(6th Cir. 1995)..........................................................................11, 12

*Am. Fed'n of State, Cty. & Mun. Employees, Council 25 v. Land,*
583 F. Supp. 2d 840 (E.D. Mich. 2008) ............................................23

*Anderson v. Celebrezze,*
460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).......................10

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937 (2009)...................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................4

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993)......................................................16, 18, 19, 20

*Bretz v. Kelman,*
773 F.3d 1026 (9th Cir. 1985) ............................................................19

*Brown v. Bartholomew Consolidated School Corporation,*
442 F.3d 588 (7th Cir. 2006) ..............................................................15

*Brown v. Philip Morris Inc.,*
250 F.3d 789 (3d Cir. 2001) ...............................................................21

*City of Mesquite v Aladdin's Castle,*
455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982).......................15

*Coalition to Defend Affirmative Action v. The Regents of the
University of Michigan,*
539 F. Supp. 960 (E.D. Mich. 2008) ..............................................14, 15

*Crown Media, LLC v. Gwinnett County,*
380 F.3d 1317 (10th Cir. 2004) ..........................................................16

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

iii

*Farber v. City of Paterson*,
   440 F.3d 131 (3d Cir. 2006) ...............................................................................19

*Federer v. Gephardt*,
   363 F.3d 754 (8th Cir. 2004) ..............................................................................21

*Flast v. Cohen*,
   392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).......................................7, 8

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999) ................................................................................7

*Grimes v. Smith*,
   776 F.2d 1359 (7th Cir. 1985) .....................................................................19, 22

*In re Refrigerant Compressors Antitrust Litig.*,
   795 F. Supp. 2d 647 (E.D. Mich. 2011) ...............................................................4

*Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*,
   713 F.2d 1221 (6th Cir. 1983) ..............................................................................8

*Jimenez v. Wellstar Health Sys.*,
   596 F.3d 1304 (11th Cir. 2010) ...................................................................20, 21

*Johnson v. Knowles*,
   113 F.3d 1114 (9th Cir. 1997) ............................................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 505 (1992)..............................................................................................9

*Massachusetts v. Mellon*,
   262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)..............................................8

*Miyazawa v. Cincinnati*,
   45 F.3d 126 (6th Cir. 1995) ..................................................................................8

*NRA v. Magaw*,
   132 F.3d 272 (6th Cir. 1997) ......................................................................11, 12

*O'Shea v. Littleton*,
   414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) .......................................7, 8

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

iv

*Olagues v. Russoniello*,
 770 F.2d 791 (9th Cir. 1985) ...............................................................23

*Parson v. Alcorn*,
 157 F. Supp. 3d 479 (E.D. Va. 2016) ....................................................24

*Sever v. Alaska Pulp Corp.*,
 978 F.2d 1529 (9th Cir. 1992) ...............................................................22

*Smith v. Allwright*,
 321 U.S. 649 (1944)................................................................................16

*Southwest Williamson County Cmty Assoc v. Slater*,
 243 F.3d 270 (6th Cir. 2001) .................................................................14

*Steigmann v. Democratic Party of Illinois*,
 406 F. Supp. 2d 975 (N.D. Ill. 2005)......................................................17

*Thomas v. U.S.*,
 523 U.S. 296 (1998)................................................................................11

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*,
 463 U.S. 825, 836 (1983)........................................................................22

*United States v. Brown*,
 494 F. Supp. 2d 440 (S.D. Miss. 2007), aff'd, 561 F.3d 420 (5th
 Cir. 2009) ...............................................................................................23

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
 865 F.2d 1539 (9th Cir. 1989) .................................................................6

*Vickery v. Jones*,
 100 F.3d 1334 (7th Cir. 1996) ...............................................................17

*Weinstein v. Mortgage Capital Associates, Inc.*,
 2:10-CV-01551-PMP, 2011 WL 90085 (D. Nev. Jan. 11, 2011)........................6

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990)..................................................................................8

**TREATISES**

15 <u>Am. Jur. 2d Civil Rights</u> § 153 ...........................................................6

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

## RULES

Fed. R. Civ. P. 12(b)(6).................................................................ix, 3, 4

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .................................................6, 10, 20, 21, 24

U.S. Const. amend. XIV ...............................................................10, 20

U.S. Const. Art. III, § 2...........................................................7, 11, 13

## STATUTES

42 U.S.C.§ 1985(3) ...................................................................passim

52 U.S.C. § 10307(b) .......................................................1, 3, 21, 23

## OTHER AUTHORITIES

http://www.freep.com/story/opinion/columnists/brian-
    dickerson/2016/11/02/gop-poll-watchers/93123864/............................................2

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## **STATEMENT OF ISSUES PRESENTED**

1.  DOES PLAINTIFF LACK STANDING BECAUSE THE "HARM" OUTLINED IN ITS COMPLAINT IS NOT ACTUAL OR IMMINENT, BUT IS INSTEAD A CONJECTURAL AND HYPOTHETICAL ACTION THAT MAY OR MAY NOT OCCUR AND THAT MAY OR MAY NOT RESULT IN A FUTURE POTENTIAL INJURY?

    Plaintiff's Answer: "No."

    Defendant MRP's Answer: "Yes."

2.  IS THIS CASE NOT RIPE BECAUSE IT ASKS THIS COURT TO HEAR CLAIMS BASED UPON CONTINGENT FUTURE EVENTS THAT MAY NOT OCCUR AS ANTICIPATED?

    Plaintiff's Answer: "No."

    Defendant MRP's Answer: "Yes."

3.  IS THIS CASE MOOT WITH REGARD TO THE MRP BECAUSE THE MRP INSTRUCTS ITS ELECTION CHALLENGERS TO SPECIFICALLY AVOID ANY CONDUCT WHICH COULD BE CONSIDERED INTIMIDATING OR HARASSING, MEANING THAT THERE IS NO CASE OR CONTROVERSY THAT NECESSITATES THIS COURT GRANTING THE RELIEF REQUESTED BY PLAINTIFF?

    Plaintiff's Answer: "No."

    Defendant MRP's Answer: "Yes."

4.  DOES PLAINTIFF FAIL TO STATE A CLAIM UNDER THE KU KLUX KLAN ACT BECAUSE THE MRP IS NOT A STATE ACTOR AND BECAUSE PLAINTIFF HAS FAILED TO SHOW THAT THE MRP ACTED WITH ANY DISCRIMINATORY ANIMUS OR THAT IT VIOLATED ANY CONSTITUTIONAL RIGHT PROTECTED AGAINST PRIVATE IMPAIRMENT?

    Plaintiff's Answer: "No."

    Defendant MRP's Answer: "Yes."

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

5.    DOES PLAINTIFF FAIL TO STATE A CLAIM UNDER SECTION 11(B) OF THE VOTING RIGHTS ACT BECAUSE PLAINTIFF DID NOT ADEQUATELY PLEAD FACTS TO SHOW THAT THE MRP ENGAGED IN, OR IS CONSPIRING TO ENGAGE IN, ANY INTIMIDATING ACTIVITY FOR PURPOSES OF VOTER SUPPRESSION?

Plaintiff's Answer: "No."

Defendant MRP's Answer: "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

MRP relies on Fed. R. Civ. P. 12(b)(6), and the additional authorities stated herein.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## I.   <u>SUMMARY OF CASE AND MOTION</u>

A mere four days before the 2016 presidential election, Plaintiff Michigan Democratic Party (the "MDP") filed this suit against the Michigan Republican Party (the "MRP"), Donald J. Trump for President, Inc. (the "Trump Campaign"), Roger J. Stone, Jr. ("Stone"), and Stop the Steal Inc. ("Stop the Seal") seeking injunctive and declaratory relief for alleged violations of 18 U.S.C. § 241, 42 U.S.C. § 1985(3) and Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b).   Upon closer review, it is clear that MDP's complaint is nothing more than a blatant political tactic designed to impact the upcoming election. In fact, MDP's complaint is part of a coordinated effort by state Democratic entities in key battleground states across the country. Within the past week, state Democratic parties have filed nearly verbatim lawsuits in federal courts in five so-called "battleground states": Arizona, Nevada, Ohio, New Jersey and Michigan.  Federal courts in two of those states, Arizona and Nevada, have already addressed the merits of MDP's arguments and denied their respective state Democratic parties' Motions for Temporary Restraining Order/Preliminary Injunction against the relevant state Republican Party.   The Ohio Federal District Court granted injunctive relief, but the 6th Circuit Court of Appeals immediately reversed findings that there is no likelihood of success.  See Exhibit 1.

1

MDP's allegations that MRP engaged in voter suppression are based solely on a purported quote by "an unnamed official" with the Trump Campaign and a smattering of quotes by the Trump Campaign and its surrogates and supporters which MDP dissects and distorts in a misguided effort to elicit racist overtones.[1] From there, based upon little more than a recent newspaper article documenting the training that Republican election challengers in Michigan receive,[2] MDP makes a conclusory leap in logic, asserting that the MRP is conspiring with the Trump Campaign, Stone, and Stop the Steal to intimidate voters in the coming presidential election. While this sort of innuendo and fearmongering may have its place on the campaign trail, such practices do not apply in Federal Court, where unfounded allegations are sanctionable.

MDP's claims against the MRP fail as a matter of law: First, while MDP attempts to blur the distinctions among Defendants, each Defendant is entitled to allegations specific to that Defendant, not "Defendants" in the plural, or unidentified "operatives" or Trump Campaign supporters from Florida, Ohio, or

---

[1] As the United States District Court for the District of Arizona noted in its Order denying the Arizona Democratic Party's lawsuit, "at least some of the Trump Campaign's statements on which Plaintiff relies are taken out of context because they were abbreviated, and when considered in full, do not persuade at all that they evince an intent to intimidate voters, or to coordinate or conspire with others to deny the vote to anyone; nor when read in full would the statements have the effect of intimidating a voter."

[2] http://www.freep.com/story/opinion/columnists/brian-dickerson/2016/11/02/gop-poll-watchers/93123864/

2

Virginia. MDP has failed to allege any details that would constitute an agreement between the MRP and any party regarding election challengers or practices related to voter suppression.

Second, MDP lacks standing to bring this Complaint. Because there is no present case or controversy, this Complaint is both not ripe and moot.

Third, MDP's Complaint fails to allege the necessary elements to state a claim under Section 1985(3). MDP's Complaint has failed to assert any allegations that would make the MRP a state actor, show that the MRP acted according to some discriminatory animus, or demonstrate that the MRP violated any constitutional right protected against private impairment.

Fourth, MDP's Complaint fails to allege the necessary elements to state a claim under Section 11(b) of the Voting Rights Act of 1965. Other than baselessly assigning nefarious motives to benign and lawful activities, MDP fails to demonstrate that the MRP engaged in, or is conspiring to engage in, any intimidating activity for purposes of voter suppression.

Consequently, this Court should dismiss this lawsuit.

## II.   STANDARD OF REVIEW

This motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  When considering a motion to dismiss, the court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *See In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 653 (E.D. Mich. 2011).  This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, *supra* at 678 (internal quotation marks and citation omitted).

Thus, Rule 12(b)(6) requires that a complaint "contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, *supra* at 555 (internal citation omitted).  A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, *supra* at 678.

4

# III.   ARGUMENT

## A.   MDP States No Claim Against the MRP

MDP's Complaint relies heavily on out-of-context quotes by the Trump Campaign, cherry picked quotes by Trump supporters who have no affiliation with the Trump Campaign, and the alleged actions and statements by Stone and Stop the Steal to craft a broad conspiracy to suppress minority voter turnout for the 2016 presidential election. *See* Complt. ¶¶ 1, 9, 33-38, 41, 56, 62, 69.  There simply is no basis in fact or law, however, for ascribing or imputing the activities of any of these actors, specifically Stone or Stop the Steal, to the MRP.  Stone and his organization are not employed by or affiliated with the MRP in any way.  The MRP has no knowledge of the activities of Stone or Stop the Steal, and did not direct, control, authorize, approve, or consent to any of the statements or actions Stone or Stop the Steal are alleged to have undertaken.  Indeed, MDP has provided no evidence whatsoever that Stone or Stop the Steal are the MRP's agents.  The Complaint vaguely identifies Stone as a "political operative" and a "longtime associate" of Donald Trump, *id.* ¶ 9, but never adduces any factual basis for concluding that Stone and Stop the Steal's alleged conduct was carried out at the direction or behest—or even with the passive knowledge of—the MRP.  To invoke the alleged actions and statements of unrelated third parties as a basis for

5

abrogating the MRP's rights under the First Amendment and Michigan law defies law and logic.

### 1. There Is No Evidence that MRP Participated in a Conspiracy to Intimidate or Suppress Voters

Although MDP expends much time detailing alleged statements and conduct by third parties, there is simply no factual sustenance for the notion that the MRP have forged an agreement to intimidate or suppress Michigan voters. To the contrary, the MRP has explicitly and repeatedly instructed their supporters to **never engage** in any course of conduct even remotely approximating voter suppression, and have at all times endeavored to ensure that supporters serving as election challengers punctiliously adhere to Michigan laws.

"The essence of a conspiracy is a combination or agreement to violate or to disregard the law." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1549 (9th Cir. 1989); *see also* 15 Am. Jur. 2d Civil Rights § 153 ("The pleadings must specifically present facts tending to show agreement and concerted action"). When, as here, a plaintiff merely delineates a constellation of independent acts by different persons acting at different times and in different places, courts will not infer the subjective unity of purpose necessary to a viable claim of civil conspiracy. *See Weinstein v. Mortgage Capital Associates, Inc.*, 2:10-CV-01551-PMP, 2011 WL 90085, at *9 (D. Nev. Jan. 11, 2011) ("Plaintiff does not state when the conspiracy began or ended, the geographic scope of the

6

conspiracy, what persons were involved, or any other facts supporting a meeting of the minds. Plaintiff does not allege facts which suggest Defendants would not have acted as they did absent a conspiracy.").

Describing a litany of alleged statements and actions by various putative "Trump supporters" and other sundry third parties at various times in different locales simply does not, as a matter of law, establish a conspiracy by the MRP and others to engage in voter suppression.  As discussed above, the MRP has taken scrupulous care to educate supporters serving as election challengers on the parameters of permissible conduct and to facilitate their compliance with them. Isolated instances evidencing election challengers' misunderstanding or disregard of these instructions—if and to the extent they occur at all—do not constitute a "meeting of the minds" to violate voting rights.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) ("To prove a civil conspiracy, the plaintiff must show that the conspiring parties 'reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'").

## B.    MDP Lacks Standing.

Article III of the United States Constitution provides that parties attempting to invoke federal jurisdiction must allege an actual case or controversy.  *O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Flast v. Cohen*, 392 U.S. 83, 94-101, 88 S.Ct. 1942, 1949-53, 20 L.Ed.2d 947 (1968).

Thus, it is a threshold requirement that Plaintiff allege that it has "sustained or is immediately in danger of sustaining some direct injury…, and not merely that [it will] suffer[] in some indefinite way in common with people generally." *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Additionally, "[t]he injury ... must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675.

The issue of standing is "a threshold question" in all federal cases. *Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*, 713 F.2d 1221, 1225 (6th Cir. 1983). Standing does not focus on the merits of a case, but instead addresses whether it is appropriate for a particular person to bring a challenge in a judicial proceeding against a particular defendant. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). This bedrock constitutionally-based principle focuses on the party seeking to be heard by a court and not on the issues he wishes to have adjudicated. *Flast v Cohen*, 392 US 83, 95; 88 S Ct 1942 (1968). Voter standing is adequate only if the voter can show that the threat of injury is real or immediate and **is not hypothetical**. *See Miyazawa v. Cincinnati,* 45 F.3d 126, 127 (6th Cir. 1995). The party seeking to participate in a case "bears the burden of demonstrating that the government's regulation of another party cause[d] [the voter] to lose a constitutional right." *Id.*

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

As the Supreme Court has explained, the irreducible constitutional minimum of standing contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 505, 560-61 (1992). First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*. at 561. The Democrats bear the burden of demonstrating that a state actor's regulation causes the loss of a constitutional right. *Id.*

The MDP fails at each level of the so-called *Lujan* standing test. The MDP has not suffered, and did not plead, any injury-in-fact that is concrete and particularized. Instead, the MDP merely pled a hypothetical scenario that, if several intervening theoretical steps developed precisely as envisioned by the MDP, still would not suffice to establish standing. It is impossible for the MDP to allege that any MRP poll challenger has taken or will take any action to prevent any other lawful voters from voting.

9

Because the MDP has failed to allege that the MRP plans to take any action that will deprive the MDP of the right to vote, it is impossible for this court to redress any hypothetical injury premised as the MDP's theoretical actions. Voters' rights under the First and Fourteenth Amendments were defined in *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983), as "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters ... to cast their votes effectively.'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). In this case, the MDP failed to allege any infringement of those rights that would necessitate the relief requested.

The normal standard for standing is further heightened in this case, given the conjectural nature of the hypothetical harm that could theoretically occur to some unidentified voter sometime in the future. Furthermore, it is impossible to argue that the MDP has standing as they cannot be the subject of any challenge that they contend the MRP plans to make. As the Supreme Court has explained, when the MDP is not the object of government action, standing is not impossible to prove, "but it is ordinarily 'substantially more difficult' to establish." *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 758, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984)).

**C.**   **This Case is Not Ripe.**

Article III of the Constitution limits federal judicial power to actual "cases" and "controversies." U.S. Const. Art. III, § 2. Closely related to this requirement is the doctrine of ripeness. This doctrine requires courts to abstain from deciding cases that are not ripe for review. *See Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 567 (6th Cir. 1995). The basic rationale of this doctrine "'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Adult Video*, 71 F.3d at 567, quoting *Thomas v. Union Carbide Agric Prods Co*., 473 U.S. 568, 580 (1985). Courts do not want to hear claims based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. U.S.*, 523 U.S. 296, 300 (1998) (internal citations omitted).

As the Sixth Circuit Court of Appeals has explained, "[r]ipeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *NRA v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997), citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967). Where a plaintiff seeks a declaratory judgment and injunctive relief, the case is deemed ripe for pre-enforcement review "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to

11

warrant the issuance of a declaratory judgment.'"  *NRA*, 132 F.3d at 284, quoting

*Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

The Court must weigh several factors in making this determination.  First,

the Court must consider the "'likelihood that the harm alleged by [the] plaintiffs

will ever come to pass.'"  *Adult Video*, 71 F.3d at 568, quoting *United*

*Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988).

Second, the Court must determine "whether the factual record is sufficiently

developed to produce a fair adjudication of the merits of the parties' respective

claims."  *Adult Video*, 71 F.3d at 568.  And finally, the Court must assess "the

hardship to the parties if judicial relief is denied at [this] stage in the proceedings."

*Adult Video*, 71 F.3d at 568, quoting *United Steelworkers*, 860 F.3d at 194.

In this case, MDP has alleged a host of speculation in an attempt to argue

that certain election day events may occur.  The MDP's claims do not pass muster

under any of the factors the Court must consider to determine if the case is ripe for

review.  First, the alleged harm will never come to pass as the MRP has clearly

stated that they will not challenge or intimidate voters, and therefore, no harm will

ever be incurred.  Second, the factual record as provided by the MDP is

overwhelmingly void of anything concrete from which this Court may adjudicate

the merits of the claims.  Relying on historical references and statements by

individuals who are not associated with the MRP provides an inadequate basis

from which this Court can render a judgment.  Third, there is no hardship imposed on either party as the action the MDP are alleging will never come to fruition.  The MDP's complaint centers on the possibility of voter intimidation on election day, and since the MRP has repeatedly stated in poll challenger trainings and in the attached affidavits, the MDP has already received the outcome they wanted.  Even if the alleged harm were to occur on election day, the MDP can certainly address the issue with the local clerks, then with the Michigan Secretary of State and, if neither the local clerks nor the Secretary of State resolve those issues, it would then be appropriate to seek an injunction.  But, until then, the MDP merely seeks to enjoin hypothetical acts.

This case should not be considered by this Court because there is no likelihood that the harm alleged will occur, there are no facts supporting the MDP's claims, and neither party will suffer any hardship if the case were not heard at this time.

**D.**     **This Case is Moot.**

Article III of the United States Constitution vests the federal courts with jurisdiction to address actual cases and controversies.  *See* U.S. Const. art. III, § 2. Under the "case or controversy" requirement, courts lack authority to issue a decision that does not affect the rights of the litigants, and the courts have a "continuing obligation" to inquire whether there is a present controversy regarding

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

which effective relief can be granted.  *Southwest Williamson County Cmty Assoc v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001).  "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties."  *Id*.

Although both parties have election challengers and poll watchers pursuant to Michigan Election Law, the MRP will not threaten or intimidate voters.  In fact, the MRP has specifically directed all election challengers to not do anything that could even remotely be construed as threats or intimidations.  As such, this case does not affect the rights of any of the litigants.  MDP has just as much legal and factual basis in asking this Court for an injunction as they would in requesting that pigs be prevented from flying.  There is not, and never has been any case or controversy that necessitates this Court granting the relief requested by the MDP.  This has always been a politically motivated stunt whose justiciability is definitively inappropriate.

This Court spoke to this exact argument in the context of the University of Michigan's past or planned practices related to the state of Michigan's ban on affirmative action under Proposal 2.  *Coalition to Defend Affirmative Action v. The Regents of the University of Michigan*, 539 F. Supp. 960, 970 (E.D. Mich. 2008).  In *Coalition to Defend Affirmative Action*, intervening defendant Eric Russell alleged that if Proposal 2 was struck down that the University *could* legally

14

consider race in transfer applications.  This was juxtaposed against the University's

undisputed testimony that the University had never considered race or other such

factors in transfer applications and would never do so, even were Proposal 2 to be

struck down.  *Id.*

The Court concluded that Intervening Defendant Russell's claim was moot,[3]

saying that "[i]t is inappropriate to second-guess Michigan's representation when

the evidence suggests its historical and future avoidance of consideration of race in

transfer applications is not mere lip-service."  *Id.*  Further, "[t]here is nothing

suspicious about a defendant proclaiming that it will continue to abide by a policy

it has employed for years and which has not been changed materially by the

commencement of litigation or the predicate events of that litigation."  *Id.*  The

same is true of the MRP—the only available evidence suggests that the MRP's

"historical and future avoidance" of any threats, intimidation, or other violations of

Michigan Election law with regard to poll challenges or election day operations "is

not mere lip-service."  *Id.*  *See also Brown v. Bartholomew Consolidated School*

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

---

[3] While "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of a practice" (*City of Mesquite v Aladdin's Castle*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)), this doctrine is generally limited to when voluntary cessation is followed by an expression of intent to continue (or recommence) noncompliance.  The RNC "has not *ceased* a challenged practice" (*Coalition to Defend Affirmative Action*, 539 F. Supp. at 970 (emphasis in original)), but rather, has stood by its policy to not be involved in any election challenge activities.  This further confirms the mootness of this action.

*Corporation*, 442 F.3d 588 (7th Cir. 2006) ("A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical set of facts.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)); *Crown Media, LLC v. Gwinnett County*, 380 F.3d 1317 (10th Cir. 2004) ("[M]ootness is a justiciability doctrine that must be satisfied before we may decide a case.") (citation omitted).  Because the relief sought against the MRP would, if granted, make no difference to the legal interests of the MDP, this case is moot.

## E.  Count I Fails to State a Claim

The MRP are not government actors, but instead private persons who are not acting under any color of state law.  The United States Supreme Court has clarified that only a narrow ambit of private conspiracies are actionable under Section 1985(3).[4]  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68

---

[4]  The Republicans are not a "state actor."  See *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (holding that alleged discrimination by political party officers did not constitute "state action" for purposes of civil rights claim, noting that "[u]nder the law of this circuit, county central committees of political parties are private actors, not public agencies, even though they are regulated by the state," adding that "action taken by private individuals may be 'under color of state law' where there is 'significant' state involvement in the action.").   More generally, courts have held political parties to be "state actors" when they are exercising governmental functions pursuant to statutory grants of authority—most notably, conducting primary elections. *See Smith v. Allwright*, 321 U.S. 649, 663 (1944) ("We think that this statutory system for the selection of party nominees for

16

(1993). Specifically, the Court explained that "to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia,* (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Id.* Neither element is satisfied here.

### 1. The MDP Has Not Alleged Or Provided Any Evidence of "Racial Animus."

As a preliminary matter, it should be emphasized that Section 1985(3) consists, in relevant part, of two distinct provisions. The first makes actionable any conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

---

inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party."). In most other situations, however, courts have been loath to ascribe state action to political parties. *See, e.g.*, *Vickery v. Jones*, 100 F.3d 1334, 1344 (7th Cir. 1996) ("The fact that the State Defendants acted in compliance with the 'rules and recommendations' of the [Republican] Party Defendants [when making hiring decisions] does not turn the Party Defendants' conduct into state action," and adding that there was no evidence that the political party had performed any traditional government functions); *Steigmann v. Democratic Party of Illinois*, 406 F. Supp. 2d 975, 980 (N.D. Ill. 2005) (political party not a state actor for purposes of Section 1983 claim alleging that political party had worked in concert with state officials to fire government employee because of his political affiliations).

17

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

immunities under the laws" [the "Equal Privileges Clause"].  The second provides a cause of action for any conspiracy "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy" [the "Support and Advocacy Clause"].  Despite the MDP's efforts to conflate them, the distinction is material.  Although the MDP invokes the text of only the Support and Advocacy Clause in pleading its claims, that provision generally has not been recognized as encompassing purely private conspiracies; undersigned counsel's research has located no federal appellate decision extending the Support and Advocacy Clause's to alleged conspiracies involving only private actors.  Notwithstanding the MDP's attempt to import it into the Support and Advocacy Clause (*see* Motion at 22), the four-part test prescribed in *Scott* and modified in *Bray* recognizes only private conspiracies arising under the Equal Privileges Clause.

Assuming, *arguendo*, that a uniform doctrinal standard governs alleged private conspiracies under both provisions, however, the MDP's Section 1985(3) is still fatally defective.  The Complaint and Motion are devoid of any articulable evidence that the MDP's alleged statements and actions were the product of racial

animus.   Indeed, the Complaint asserts that Mr. Trump's alleged comments encouraging citizens to serve as poll observers "are consistently directed at Democratic-leaning communities with large minority populations," Complt. ¶ 28, which confounds a vital distinction between a putative racial motivation and a partisan motivation.

Courts have held consistently that private conspiracies predicated on political or partisan rationales are not actionable under Section 1985(3).  *See, e.g.*, *Bretz v. Kelman*, 773 F.3d 1026, 1028 (9th Cir. 1985) (dismissing Section 1985(3) conspiracy claim, explaining that "[e]ven construing [the] complaint liberally, we cannot find an allegation of racial or class-based discrimination.  [The plaintiff], therefore, cannot state a cause of action under the first clause of § 1985(3)."); *Farber v. City of Paterson*, 440 F.3d 131, 142 (3d Cir. 2006) ("Allowing § 1985(3) to reach politically motivated conspiracies would involve the federal courts in policing the political arena in ways that the drafters of § 1985(3) could not have intended."); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985) ("[W]e join the conclusion of the Fourth Circuit . . . that § 1985(3) does not reach nonracial political conspiracies.").

Crucially, the MDP has adduced no statement, representation or conduct by the Republicans that plausibly evinces the "invidious racial animus" required under *Bray*.  Indeed, the only statements bearing a racial cast were made by random

19

individuals on social media who claim to be "Trump supporters," but are not from Michigan and have no relation to MRP. *See* Complt. ¶¶ 51-54. Those individuals do not have—and are not even alleged to have—any relationship or affiliation whatsoever with the MRP; their views or words cannot, as a matter of law, be imputed to the MRP.

### 2. The MDP Have Not Alleged that the MRP Violated Any Right Protected Against Private Impairment.

The MDP's Section 1985(3) claim is defective for a second, independent reason. To maintain a cause of action against private actors, the Plaintiff must prove "an intent to deprive persons of a right guaranteed against private impairment." *Bray*, 506 U.S. at 274. Importantly, "[t]here are few such rights." *Id.* at 278. Federal courts have recognized two—and only two—constitutional rights amenable to enforcement against private actors, namely, (1) the Thirteenth Amendment's prohibition against slavery or involuntary servitude, and (2) the right of interstate travel. *See id.*; *see also Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. . . . The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude."); The right to vote—which derives from the First and Fourteenth

20

Amendments—accordingly is not a cognizable predicate for Section 1985(3) claims against private actors. *See Federer v. Gephardt*, 363 F.3d 754, 759–60 (8th Cir. 2004) (rejecting Section 1985(3) claim of political candidate who alleged his headquarters had been broken into and that he had been assaulted by political opponents, holding that "[p]assing the question of whether or not a political party is a 'class' under the statute, it is clear that the 'rights' involved here are solely First Amendment rights. As such, they are not rights that are 'protected against both private and official encroachment.'"); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (rejecting claim that tobacco companies undertook a racially based conspiracy, reasoning that "in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel. The instant case is distinguishable from the cases cited above because Black Smokers assert the deprivation of a different type of rights: those of property and contract.").[5]

---

[5]    That the constitutional right to vote is also protected by statutory enactments against certain private interferences—such as the Voting Rights Act—does not salvage MDP's claim.  A Section 1985(3) plaintiff must demonstrate that the underlying right s/he seeks to vindicate is "*constitutionally* protected against private impairment." *Jimenez*, 596 F.3d at 1312 (emphasis added); *see also Brown*, 250 F.3d at 805 (noting that although the rights of property and contract posited by the plaintiffs do "entail freedom from discrimination by a private actor," they "are statutorily enacted, rather than of purely constitutional provenance, [and thus] they cannot be vindicated under § 1985(3)").

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

More generally, this lawsuit encapsulates precisely the type of dispute federal courts have long eschewed as political warfare through judicial means. Expressing skepticism of the notion that Section 1985(3) could encompass non-racial conspiracies, the Supreme Court cautioned that such a proposition "would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.  If [this] submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings."  *United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 836 (1983), 463 U.S. at 836.  Mindful that "§ 1985(3) is not to be construed as a general federal tort law," *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992), courts have consistently turned a jaundiced eye toward quintessentially political disputes between private parties cloaked in the lexicon of civil rights.  *See Grimes*, 776 F.2d at 1366 (holding that alleged private conspiracy to mislead voters by running a "sham" candidate was not actionable under Section 1985(3), reasoning that "this case presents a far greater danger that, in the words of *Scott,* § 1985(3) would provide 'a remedy for every concerted effort by one political group to nullify the

22

influence of or do injury to a competing group by use of otherwise unlawful means'").

In sum, the MDP has offered no evidence whatsoever that the MRP engaged in a conspiracy born of racial animus. In addition, because the right to vote is not constitutionally protected against impairment by private actors, it cannot undergird a Section 1985(3) claim against private persons such as the MRP. Accordingly, the MDP's claim under the Ku Klux Klan Act fails as a matter of law.

**F.** **Count II Fails to State a Claim Under the Voting Rights Act**

To prevail under Section 11(b) of the Voting Rights Act of 1965, a plaintiff must prove "(1) that there was an intimidation, threat or coercion, or an attempt to intimidate, threaten or coerce and (2) that the intimidation or attempt was for the purpose of interfering with the right to vote." *Am. Fed'n of State, Cty. & Mun. Employees, Council 25 v. Land*, 583 F. Supp. 2d 840, 846 (E.D. Mich. 2008); *see Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985) ("[T]he organizations' claims under the Voting Rights Act against these officials do not appear to have merit. Assuming that the search of voting records intimidated bilingual voters, such intimidation would satisfy only one part of a two-pronged test for violations of [Section 11(b)]: the voters and organizations were intimidated, but the officials did not intend to intimidate."). Claims under this provision are exceedingly difficult to establish. *See United States v. Brown*, 494 F. Supp. 2d 440, 477 (S.D.

Miss. 2007), aff'd, 561 F.3d 420 (5th Cir. 2009) (noting that the court itself "has found no case in which plaintiffs have prevailed under this section"); *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498–99 (E.D. Va. 2016) (finding no likelihood of success on the merits).

Unsurprisingly, MDP here fails to clear even the first hurdle.  Its various allegations of "intimidation" are nothing more than legitimate exercises of free speech.  Wearing shirts that happen to be red—a ubiquitous color carrying no particular political or other connotation—plainly is not the kind of activity that inspired the statute.  Conducting exit polling, (Compl. ¶¶ 36-37, 59), is a regular, harmless feature of the election-day process, and an entirely proper exercise of First Amendment rights.  These benign activities bear no resemblance to the conduct demonstrated in *Thune*—a case involving a concerted effort to follow a discrete class of voters (Native Americans) to record their license-plate numbers. *See Thune*, Dkt. No. 6.  Moreover, even setting aside this problem, the MDP's claim under § 1971(b) also fails because the MDP offers no evidence that any of the alleged "intimidation" is animated by a "specific intent to intimidate, threaten, coerce, or attempt to do so to prevent a person from voting or attempting to vote." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016).  The MDP's claim thus fails as a matter of law.

24

## <u>CONCLUSION</u>

The MDP's unsupported and speculative claims are insufficient to justify the extraordinary remedy of a preliminary injunction.   This Court should dismiss Plaintiff's Complaint with prejudice, award the MRP their attorney fees and costs, and grant any other relief this Court deems appropriate.

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date:  November 7, 2016

By:  */s/ Gary P. Gordon*
Gary P. Gordon (P26290)
W. Alan Wilk (P54059)
Jason T. Hanselman (P61813)
Attorneys for Defendant Michigan
Republican Party
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
ggordon@dykema.com
awilk@dykema.com
jhanselman@dykema.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

By: <u>/s/ Gary P. Gordon</u>
Gary P. Gordon (P26290)
W. Alan Wilk (P54059)
Jason T. Hanselman (P61813)
Attorneys for Defendant Michigan
Republican Party
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100